IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MISSIONARY BENEDICTINE SISTERS, INC., | ) ) ) | 4:11CV3180 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| HOFFMAN, LLC, | ) ) | |
| Defendant and Third-Party Plaintiff | ) ) ) | |
| v. | ) ) | MEMORANDUM |
| FREDERICKSEN ENGINEERING, INC., VOLKMAN PLUMBING & HEATING, INC., and LONNIE ROBINSON d/b/a R&R Mechanical Insulation, | ) ) ) ) ) | AND ORDER |
| Third-Party Defendants | ) ) ) | |
| VOLKMAN PLUMBING & HEATING, INC., and AMCO INSURANCE COMPANY, | ) ) ) ) | |
| Third-Party Plaintiffs | ) ) | |
| v. | ) ) | |
| LONNIE ROBINSON d/b/a R&R Mechanical Insulation, and ENGINEERED CONTROLS, INC., | ) ) ) ) | |
| Third-Party Defendants | ) ) | |

This matter is before the court on motions for summary judgment (Filing Nos. 121, 130) filed by Lonnie Robinson doing business as R&R Mechanical Insulation

("Robinson" or "R&R"). Robinson also requests leave to amend one of the motions for summary judgment (Filing No. 153). The motions are directed at a third-party complaint (Filing No. 78) filed against Robinson by Hoffman, LLC ("Hoffman") and a second amended third-party complaint (Filing No. 148) filed against Robinson by Volkman Plumbing & Heating, Inc. ("Volkman"), and AMCO Insurance Company ("AMCO").

## I. PROCEDURAL BACKGROUND

This action was commenced on September 23, 2011, in the District Court of Madison County, Nebraska, by Missionary Benedictine Sisters, Inc. ("MBS"), a Nebraska non-profit corporation, against Hoffman, a Wisconsin limited liability company which is wholly owned by a Wisconsin corporation (Filing Nos. 1-1, 7). In its complaint, MBS alleged that it "is the owner of real property and building improvements known as the Immaculata Monastery located at 300 North 18th Street, Norfolk, NE (herein, 'Monastery')"; that "[o]n or about March 28, 2007, [MSB] and [Hoffman] entered into a written contract pursuant to which [Hoffman] agreed to perform an extensive renovation project on the Monastery ... [and] to act as general contractor, designer and engineer for all aspects of the renovation project (herein, 'Project')"; that "[s]everal months after moving back into the Monastery [in May 2009], the occupants of the Monastery began noticing deficiencies and defects relating to the HVAC system and other mechanical systems ..., including ... that the system fails to dehumidify the air in the interior of the Monastery which in turn has resulted in the formation of significant amounts of mold"; that "[i]t has also been determined that the equipment and machinery comprising the mechanical systems ... greatly exceeds that which would be necessary to meet the needs of a building of the Monastery's size and type; thus, [MSB] has been inappropriately overcharged"; and that "[b]eginning in July and August of 2009 and thereafter, the occupants of the Monastery began observing numerous defects and deficiencies in the construction and design of the renovation work by [Hoffman], including ... defective gasket work, defective air handler units, defective flooring, defective insulation, defective bathroom

vents, negative building pressure, and defective water heaters" (Filing No. 1-1, at CM/ECF pp. 2-3, ¶¶ 3, 4, 8-10). MSB sued Hoffman to recover damages "in excess of $250,000.00" for alleged breach of contract, negligence, and professional negligence (Filing No. 1-1, at CM/ECF pp. 4-5, ¶¶ 11-21).

Hoffman removed the action to this court on October 19, 2011, on the basis of diversity jurisdiction (Filing No. 1). Following removal, Hoffman obtained a stay of proceedings to allow time for mediation, as provided by the parties' contract (Filing No. 21). The stay was twice extended upon the joint motion of Hoffman and MBS (Filing Nos. 23, 26).

On October 1, 2012, Hoffman answered and filed a third-party complaint against Fredericksen Engineering, Inc. ("Fredericksen"), a Wisconsin corporation, and Volkman, a Nebraska corporation (Filing No. 28).[1] Hoffman alleged that it "entered into a contract ... with Fredericksen, pursuant to which Fredericksen ... was to act as a design consultant with respect to the HVAC components of the project," and that it also "entered into a subcontract ... with Volkman, pursuant to which Volkman was to perform construction services related to the Monastery's plumbing and HVAC components ... [and] also [be] responsible for the design and implementation of the HVAC control system" (Filing No. 28, at CM/ECF pp. 7-8, ¶¶ 44, 46). Hoffman claimed that it had expended $945,674.38 "to perform various remediation and repair work on the Monastery" and to "attempt[ ] to resolve this dispute with MBS" (Filing No. 28, at CM/ECF p. 9, ¶ 52), and it sought to recover this amount, plus any additional future damages, from both third-party defendants based on theories of breach of contract, negligence, indemnity, contribution, and subrogation (Filing No. 28, at CM/ECF pp. 9-17, ¶¶ 53-76 (*re* Fredericksen), 77-100 (*re* Volkman)).

---

[1] The third-party complaint is erroneously identified as a "cross-complaint." *See* Fed. R. Civ. P. 7(a) (listing allowable pleadings).

On October 23, 2012, Volkman answered Hoffman's third-party complaint and filed its own third-party complaint against Lonnie Robinson doing business as R&R Mechanical Insulation ("Robinson"), a Nebraska resident, and Engineered Controls, Inc. ("Engineered Controls"), a Nebraska corporation (Filing No. 39).[2] Fredericksen answered Hoffman's third-party complaint on October 26, 2012, (Filing No. 46).

In its third-party complaint, Volkman alleged that it "subcontracted the insulation portion of the work on the Monastary Renovation to ... [Robinson] pursuant to Purchase Order No. 1490 attached [to the third-party complaint]" (Filing No. 39, at CM/ECF p. 7, ¶ 60), and that "[i]f as alleged by Hoffman the insulation work at the Monastery Renovation was not properly performed and resulted in damage to the [MBS] and/or Hoffman, Robinson has breached his agreement to perform his insulation work on the Monastery Renovation in a good and workmanlike manner, and/or has negligently performed his work under the insulation subcontract with Volkman" (Filing No. 39, at CM/ECF p. 8, ¶ 62). Similarly, Volkman alleged that it "subcontracted the controls portion of its subcontract work to Engineered Controls" (Filing No. 39, at CM/ECF p. 9, ¶ 69), and that "[i]f as alleged by Hoffman the work on the HVAC controls on the Monastery Renovation was not properly performed and resulted in damage to the [MBS] and/or Hoffman, Engineered Controls has breached its agreement to perform its work at the Monastery in a good and workmanlike manner, and/or has negligently performed its work under the subcontract with Volkman" (*id.*, ¶ 71).

On November 21, 2012, Engineered Contols answered Volkman's third-party complaint (Filing No. 56). On December 19, 2012, Robinson answered Volkman's third-party complaint (Filing No. 60).

On February 1, 2013, MBS filed a Rule 41(a)(2) motion for the voluntary dismissal, with prejudice, of its claims against Hoffman (Filing No. 66). Hoffman,

---

[2] This pleading is also erroneously identified as a "cross-complaint."

Fredericksen, Volkman, and Engineered Controls all consented to the motion, but Robinson did not (*id.*; Filing No. 68). The motion was granted by the court on February 6, 2013 (Filing No. 69), but no judgment was entered.

On March 18, 2013, Volkman filed a Rule 41(a)(2) motion for the voluntary dismissal, with prejudice, of its claims against Engineered Controls (Filing No. 72). Hoffman and Fredericksen consented to the motion, but Robinson did not (*id.*; Filing No. 74). The motion was granted by the court on April 22, 2013 (Filing No. 77), but no judgment was entered.

On March 21, 2013, Hoffman filed a Rule 41(a)(2) motion for the dismissal, with prejudice, of its claims against Fredericksen (Filing No. 73). Volkman and Engineered Controls consented to the motion, but Robinson did not (*id.*; Filing No. 75). The motion was granted by the court on April 22, 2013 (Filing No. 77), but no judgment was entered.

On May 10, 2013, Hoffman filed a Rule 41(a)(2) motion for the dismissal, with prejudice, of its claims against Volkman (Filing No. 79). Volkman and Engineered Controls consented to the motion, but Robinson did not (*id.*). The motion was granted by the court on June 10, 2013 (Filing No. 84), but no judgment was entered.

Also on May 10, 2013, Hoffman filed third-party complaint against Robinson and Volkman filed an amended third-party complaint against Robinson (Filing Nos. 78, 80). Hoffman and Volkman both claim a right to indemnification, contribution, and subrogation, and seek to recover damages for "sums paid ... to make repairs and/or make repairs on the Project and to settle the dispute with MBS" (*id.*). Robinson answered both pleadings on May 20, 2013 (Filing Nos. 81, 82). Discovery followed.

On December 12, 2014, Robinson filed a motion for summary judgment on Hoffman's third-party complaint (Filing No. 121). The motion is supported by a brief (Filing No. 122), index of evidence (Filing No. 123), and supplemental index of

evidence (Filing No. 133). Hoffman responded to the motion on January 16, 2015, with a brief (Filing No. 135) and index of evidence (Filing No. 136). Robinson filed a reply brief on January 23, 2015 (Filing No. 139).

On January 13, 2015, Robinson filed a motion for summary judgment on Volkman's amended third-party complaint (Filing No. 130).The motion is supported by a brief (Filing No. 131), index of evidence (Filing No. 132), and supplemental index of evidence (Filing No. 134). Volkman responded to the motion on February 6, 2015, with a brief (Filing No. 143) and index of evidence (Filing No. 144). Robinson filed a reply brief on February 13, 2015 (Filing No. 149), together with an index of evidence (Filing No. 150).

On February 6, 2015, Volkman filed an unopposed motion to amend its third-party complaint to add AMCO Insurance Company ("AMCO") as a third-party plaintiff in order "to address R&R's concerns about the real-party in interest on the claims asserted by Volkman" (Filing No. 142). The court granted the motion on February 9, 2015 (Filing No. 145 (text order)), and the second amended third-party complaint was filed on February 13, 2015 (Filing No. 148). Robinson answered this pleading on February 27, 2015 (Filing No. 154).

On February 23, 2015, Robinson filed a motion for leave to amend its motion for summary judgment against Hoffman to include certain arguments that were made in its motion for summary judgment against Volkman (Filing No. 153). Hoffman, Volkman, and AMCO objected to the motion on March 9, 2015 (Filing No. 156).[3] Robinson replied on March 16, 2015 (Filing No. 162).

_____

[3] The third-party plaintiffs' "objection" is not a proper filing. *See* NECivR 7.1(b)(1)(A) ("The party opposing a motion must not file an 'answer,' 'opposition,' 'objection,' or 'response,' or any similarly titled responsive filing." The "objection" will be denied without prejudice and treated as a brief.

On March 13, 2015, Robinson filed an unopposed motion for leave to file an amended answer to Hoffman's third-party complaint to assert several affirmative defenses (Filing No. 159). The motion was granted that same day (Filing No. 160 (text order)), and the amended answer was filed on March 16, 2015 (Filing No. 161).

## II. DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), and the court must not weigh evidence or make credibility determinations, *Anderson*, 477 U.S. at 249.

### A. Hoffman's Claims Against Robinson

Hoffman alleges in its third-party complaint that "[a]ll parties to this litigation other than Lonnie Robinson d/b/a R&R Mechanical Insulation ("R&R") have entered into a multi-party settlement agreement which resolved certain claims at issue in this litigation" (Filing No. 78, at CM/ECF p. 1, ¶ 1). MBS's claims relating to Robinson's insulation work are summarized as follows:

> 13. Among other things, MBS alleged that the purported problems with the Monastery were due to design and performance defects in the Monastery's HVAC system. Examples of the alleged defects asserted by MBS include that the HVAC system was improperly designed and installed in that some of the units in the system were oversized and piping was placed too close to walls or obstructions. Because of the

pipes' proximity to other obstructions, MBS alleged that the pipes were not properly insulated. MBS alleged that this lack of insulation caused significant amounts of condensation to form on the exterior of the pipes. MBS alleged that this excess condensation caused water damage to the ceiling tiles, walls, floors, and various other portions of the Monastery and contributed to the humidity issues in the building.

14. Among other things, MBS' allegations stated that the purported problems with the Monastery resulted in uncomfortable living conditions and caused condensation which, in turn, caused water damage to the ceiling tiles, insulation, walls, floors, and various other portions of the Monastery.

15. Further, MBS alleged that the increased humidity caused mold to form in various portions of the Monastery. MBS alleged that the mold migrated throughout the monastery and was released and dispersed into the atmosphere within the Monastery.

(Filing No. 78, at CM/ECF pp. 3-4, ¶¶ 13-15). Hoffman alleges that "[a]s a proximate result of MBS's allegations, ... Hoffman performed or paid for others to perform various remediation and repair work on the Monastery ... [and] has also incurred various costs and expenses in resolving this dispute with MBS, including the incurrence of obligations under the multi-party settlement agreement" (Filing No. 78, at CM/ECF p. 4, ¶ 18). Two settlement documents are in the record as Exhibits 23 and 24 to the deposition Miles Girouard (Filing No. 123-2).

The first settlement document is an agreement which provides for the payment of $1.9 million to MBS "from several sources including monies paid from various insurance companies," in consideration for which MBS "releases, waives, and forever discharges any and all claims, demands, and causes of action, whether based in law or in equity, known and unknown, against Hoffman, FEI [Fredericksen], Volkman, EC [Engineered Controls], and their respective parents, subsidiaries, affiliates, suppliers, dealers, shareholders, subcontractors, officers, representatives, employees, agents, successors, and any and all insurance companies providing insurance for

Hoffman, FEI, Volkman and EC, ... arising out of or relating to the MBS Claims and/or the Project, including but not limited to any claims for warranty express or implied" (Filing No. 123-2, at CM/ECF p. 8, ¶¶ 1-2, 4). The agreement further provides that "Hoffman, FEI, Volkman, and EC release, waive, and forever discharge MBS with respect to any and all liens, claims, demands, and causes of action arising out of or relating to the MBS Claims and/or the Project, whether based in law or in equity," but "[t]his release expressly does not apply to any claims that Hoffman, FEI, Volkman or EC may have against Lonnie Robinson d/b/a R&R Mechanical Insulation" (*id.*, ¶ 5). The agreement "confers no rights, benefits, defenses, or causes of action in favor of any third parties or entities" (Filing No. 123-2, at CM/ECF p. 9, ¶ 7). "The Parties do not admit liability ...." (Filing No. 123-2, at CM/ECF p. 8, ¶ 6).

The second settlement document is an agreement entered into by Hoffman, Fredericksen, Volkman, and Engineered Controls, in which responsibility for the $1.9 million settlement payment to MBS is apportioned as follows:

a.    Hoffman's Insurer, Zurich agrees to pay Five Hundred Thousand dollars ($500,000)[;]

b.    Hoffman agrees to pay One Hundred Fifty Thousand dollars ($150,000);

c.    Volkman's Insurer, Allied[4] agrees to pay Three Hundred Fifty Thousand dollars ($350,000);

d.    FEI's Insurer, Continental Casualty Company agrees to pay Six Hundred Fifty Thousand dollars ($650,000); [and]

e.    EC's Insurer, Allied agrees to pay Two Hundred Fifty Thousand dollars ($250,000)[.]

---

[4] AMCO is a subsidiary of Allied. (*See* Filing No. 148, at CM/ECF p. 2, ¶ 5).

(Filing No. 123-2, at CM/ECF pp. 16-17, ¶ 2). In addition to those payments, "Volkman's Insurer, Allied agrees to pay Four Hundred Thousand dollars ($400,000)" to Hoffman, and "EC's Insurer, Allied agrees to pay Seventy-five Thousand dollars ($75,000)" to Hoffman (Filing No. 123-2, at CM/ECF p. 17, ¶ 4). The agreement contains a mutual release, but provides that "nothing in this Settlement Agreement shall be construed in any way as a release of any claims against Robinson or the right to proceeds from pursuit of Robinson as defined further in this Settlement Agreement" (*id.*, ¶ 7). "The Parties have each expressly reserved their claims, if any, against Robinson" (Filing No. 123-2, at CM/ECF p. 18, ¶ 8). "The Parties further agree that Zurich/Hoffman and Allied/Volkman may, in their discretion, continue the prosecution of the claims against Robinson" (*id.*) "The costs of recovery will be paid from any proceeds first," and "[t]he remaining proceeds from the recovery, if any, shall be split as determined by Zurich/Hoffman and Allied/Volkman" (*id.*).

## 1. Indemnity and Contribution

Hoffman's "first claim for relief" against Robinson is based on "common law implied indemnity" (Filing No. 78, at CM/ECF p. 4). Hoffman alleges:

> 20. MBS alleged that Hoffman is liable for various errors and omissions regarding the construction and design of the Monastery's HVAC system. Under its subcontract with Volkman, R&R was responsible for the placement of insulation. To the extent MBS's allegations regarding the HVAC system's construction defects are true, such defects were proximately caused, in whole or in part, by R&R.

> 21. As a result of MBS's allegations, Hoffman has incurred damages in an amount to be proven at trial related to sums paid by Hoffman to make repairs and/or pay for repairs on the Project and to settle the dispute with MBS. The damages Hoffman has incurred and may continue to incur were proximately caused by R&R.

> 22. As a result of MBS's allegations, Hoffman has discharged a liability that in justice should be discharged by R&R.

> 23. Hoffman is entitled to be indemnified by R&R in an amount to be proven at trial related to sums paid by Hoffman to make repairs and/or pay for repairs on the Project and to settle the dispute with MBS, plus any additional damages Hoffman may suffer in the future in connection with this matter.

(Filing No. 78, at CM/ECF pp. 4-5, ¶¶ 20-23).

Hoffman's "second claim for relief" is identified as a contribution claim (Filing No. 78, at CM/ECF p. 5). The allegations for this claim are substantially similar to paragraphs 20, 21, and 23 of the indemnity claim:

> 25. MBS alleged that Hoffman is liable for various errors and omissions regarding the construction and design of the Monastery's HVAC system. Under its subcontract with Volkman, R&R was responsible for the placement of insulation. To the extent MBS's allegations regarding the HVAC system's defects are true, such defects were proximately caused by, in whole or in part, the acts or omissions of R&R.
>
> 26. As a result of MBS's allegations, Hoffman has incurred damages in an amount to be proven at trial related to sums paid by Hoffman to make repairs and/or pay for repairs on the Project and to settle the dispute with MBS. The damages Hoffman has incurred and may continue to incur were proximately caused, in whole or in part, by R &R.
>
> 27. Hoffman is entitled to contribution from R&R in an amount to be proven at trial related to sums paid by Hoffman to make repairs and/or pay for repairs on the Project and to settle the dispute with MBS, plus any additional damages Hoffman may suffer in the future. In addition, Hoffman is entitled to obtain an apportionment of R&R's comparative fault under Neb. Rev. Stat. § 25-21,185.10

(Filing No. 78, at CM/ECF pp. 5-6, ¶¶ 25-27).

-11-

"Under Nebraska law, indemnification is available when one party is compelled to pay money which in justice another ought to pay or has agreed to pay." *Downey v. Western Community College Area*, 808 N.W.2d 839, 854 (Neb. 2012), citing *Kuhn v. Wells Fargo Bank of Neb.*, 771 N.W.2d 103 (Neb. 2009). "Generally, the party seeking indemnification must have been free of any wrongdoing, and its liability is vicariously imposed. *Id.*, citing *Warner v. Reagan Buick*, 483 N.W.2d 764 (Neb. 1992). However, it has been held "[i]n the tort context ... that indemnity is available to one who engaged in merely passive neglect, but unavailable to one who engaged in direct and active negligence. *Warner*, 483 N.W.2d at 771, citing *Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.*, 443 N.W.2d 872 (Neb. 1989) (general contractor had common-law right of indemnification against subcontractor where contractor's liability was based solely on its failure to adequately inspect work of subcontractor).

"Though at one time founded upon an implied contract, today the right to indemnity is generally regarded as equitable in nature." *Warner*, 483 N.W.2d at 770, citing *City of Wood River v. Geer-Melkus Const. Co.*, 444 N.W.2d 305 (Neb. 1989). *See also United General Title Insurance Company v. Malone*, 858 N.W.2d 196, 217-18 (Neb. 2015) ("Absent a contractual arrangement, the right to indemnity has its roots in equity.").

"Contribution is defined as a sharing of the cost of an injury as opposed to a complete shifting of the cost from one to another, which is indemnification." *Id.*, at 212, citing *Estate of Powell v. Montange*, 765 N.W.2d 496 (Neb. 2009). "[B]oth indemnity and contribution rest on principles of restitution and unjust enrichment." *Id.*, citing Restatement (Third) of Restitution and Unjust Enrichment § 23, comment a. (2011).

"A party has a claim for indemnification if it pays a common liability that, as between itself and another party, is altogether the responsibility of the other party." *Id.*, at 212-13. "In contrast, a claim for contribution arises when a party has paid more

-12-

than its fair share of a common liability that is allocated in some proportion between itself and another party." *Id.*, at 213. "[T]hose entitled to indemnity are generally free from personal fault while those entitled to contribution are not." *Downey*, 808 N.W.2d at 853.

"The prerequisites to a claim for contribution are that the party seeking contribution and the party from whom it is sought share a common liability and that the party seeking contribution has discharged more than his fair share of the common liability." *Id.*, at 212, quoting *Estate of Powell*, 765 N.W.2d at 500, citing 18 C.J.S. *Contribution* § 5 (1990). "In other words, a common liability to the same person must exist in order for there to be contribution." *Estate of Powell*, 765 N.W.2d at 500, quoting *Smith v. Kellerman*, 541 N.W.2d 59, 65 (Neb. 1995).

Because the concepts are so closely related, the Restatement treats indemnity and contribution in a single rule that provides:

(1) If the claimant renders to a third person a performance for which claimant and defendant are jointly and severally liable, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment.

(2) There is unjust enrichment in such a case to the extent that

(a) the effect of the claimant's intervention is to reduce an enforceable obligation of the defendant to the third person, and

(b) as between the claimant and the defendant, the obligation discharged (or the part thereof for which the claimant seeks restitution) was primarily the responsibility of the defendant.

Restatement (Third) of Restitution and Unjust Enrichment § 23 (2011). As further explained in the comments:

A claim in restitution is potentially available in any situation not governed by express contract in which A discharges all or part of what is (i) a common liability of A and B vis-à-vis a third-party obligee, but (ii) the obligation of B as between A and B.... The claim is called indemnity when the liability in question, as between the parties, is altogether the responsibility of B; it is called contribution when A has paid more than A's share of a common liability that is allocated in some proportion between them. The logic and the rationale of the claim in restitution are precisely the same in either case.

*Id.*, comment a.

Robinson argues that indemnity, contribution, and subrogation have been treated as remedies or theories of recovery by Nebraska courts, as opposed to claims or causes of action. *See, e.g., Fuxa v. CTB, Inc.*, No. A-98-800, 1999 WL 1338338, at *4 (Neb.App. Nov. 23, 1999) (unpublished) ("In the instant case, equitable subrogation, contribution, and indemnification are not separate causes of action, but, rather, alternative theories of recovery."). Robinson then contends that Hoffman's action sounds in contract because "[t]he source of Hoffman's allegations against R&R originates from R&R's contractual duty to Volkman to insulate the Monastery during the Project" (Filing No. 122, at CM/ECF p. 11), and concludes that the action must be dismissed because "R&R never had a contract with Hoffman to undertake any work on the Project" (Filing No. 122, at CM/ECF p. 12).

In *Cerny v. Todco Barricade Co.*, 733 N.W.2d 877, 885 (Neb. 2007), the Nebraska Supreme Court stated that "[i]t is questionable whether contribution and indemnity are separate causes of action, as opposed to theories of recovery, ...." The court found it unnecessary to decide issue in *Cerny*, but more recently, in *Malone*, it ruled that "indemnification may be asserted as an independent claim under Nebraska law." 858 N.W.2d at 217-18.

-14-

The *Malone* decision defeats Robinson's argument, but the argument is flawed in any event because Hoffman's indemnification claim is based upon its payment of an obligation that Robinson allegedly owed to MBS, and not upon any contractual relationship between Hoffman and Robinson. The rule providing a right to indemnity "applies irrespective of the existence of a contract or agreement between the payor and the primary obligor, although it is subject to the terms of any contract which the parties may make." Restatement (First) of Restitution § 76, comment b (1937).[5] "This is because the duty of indemnity by the principal obligor exists although he did not consent to enter into the relation with the payor out of which the duty of reimbursement arises." *Id.*

"A duty to indemnify will always arise out of another more basic obligation whether it arises on contract or tort." *City of Wood River*, 444 N.W.2d at 309. Hoffman's third-party complaint does not delineate what obligation Robinson, as a sub-subcontractor, owed to the project owner, MBS, but Robinson argues that a negligence theory will fail as a matter of law because there is no privity of contract between MBS and Robinson. In making this argument, Robinson relies on *Hawkins Const. Co. v. Peterson Contractors, Inc.*, 970 F. Supp. 2d 945, 952 (D. Neb. 2013), in which this court held that under Nebraska law, lack of privity of contract between a prime contractor and consultants who were hired by a subcontractor to provide design and engineering services for a road construction project barred the contractor's claims against the consultants for indemnity, contribution, and subrogation. The holding in Hawkins, however, was premised on a determination that "[n]o matter how

---

[5] "A person [*i.e.*, the payor] who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another [*i.e.*, the primary obligor] should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." Restatement (First) of Restitution § 76 (1937). This rule "applies where two or more persons are subject to a duty to a third person either as joint promisors or otherwise, under such circumstances that one or more of them, as between themselves, should perform it rather than the other." *Id.*, comment b.

-15-

[the contractor] couches these claims [against the consultants], including those for equitable relief, they are really claims for professional negligence." *Id.* "[I]n Nebraska, absent proof of fraud or some other extraordinary facts that would override the general rule, professionals are not liable in negligence to third parties with whom they are not in privity of contract." *John Day Co. v. Alvine & Associates, Inc.*, 510 N.W.2d 462, 466 (Neb.App. 1993). Robinson does not claim to be a "professional."

Robinson next states that "a party cannot seek indemnity from another party in tort unless a common liability exists between the two" (Filing No. 139 at CM/ECF p. 7, citing *Kuhn*, 771 N.W.2d at 119-120). Robinson argues that there is no common liability because "Hoffman contracted with MBS (owner) to be the general contractor on the Project," while "R&R was a subcontractor of Volkman on the Project and did not have a contract with MBS for any of the work undertaken to remodel the Monastery" (Filing No. 122 at CM/ECF pp. 15-16). Even though privity of contract may not exist between R&R and MBS, *see Moglia v. McNeil Co., Inc.*, 700 N.W.2d 608, 614 (Neb. 2005) ("[I]n the absence of an otherwise binding agreement, express or implied, there is no privity of contract between a subcontractor and the property owner who negotiated the original agreement with the general contractor."), "a lack of privity [is] 'immaterial' because contribution and indemnification are common-law equitable remedies that are not limited by the strictures of legal theories that require privity." *Parkos Const. Co., Inc. v. Anchor Distributing, Inc.*, No. A07-0700, 2008 WL 2246044, at *4 (Minn.App. June 3 ,2008), citing *City of Willmar v. Short-Elliott-Hendrickson, Inc.*, 512 N.W.2d 872, 874, 876-77 (Minn. 1994). "Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds." *Guillard v. Niagara Machine and Tool Works*, 488 F.2d 20, 22 (8th Cir. 1973) (applying Minnesota law).

Finally, Robinson argues that the "accepted work doctrine" bars any recovery in this case. Under Nebraska law, "[a] construction contractor is not liable for injuries or damage to a third person with whom he is not in contractual relation resulting from the negligent performance of his duty under his contract with the contractee where the

-16-

injury or damage is sustained after the work is completed and accepted by the owner." *Delicious Foods Co., Inc. v. Millard Warehouse, Inc.*, 507 N.W.2d 631, 638 (Neb. 1993), quoting *Stover v. Ed Miller & Sons, Inc.*, 231 N.W.2d 700, 703 (Neb. 1975). The Nebraska Supreme Court "has recognized an exception to the accepted work doctrine in situations where ... the defect at issue was latent and could not have been discovered by the owners or employer." *Moglia*, 700 N.W.2d at 619 (holding that subsequent homeowners could not recover against contractor and subcontractors for roofing defects and drainage problems), quoting *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 579 N.W.2d 526, 528 (1998). To the extent that the accepted work doctrine may apply in this case, there are genuine issues a material fact regarding MBS's acceptance of the work and whether the alleged defects were latent and could not have been discovered.

### 3. Subrogation

Hoffman's final, "third claim for relief" asserts a right to "subrogation" (Filing No. 122, at CM/ECF p. 6). The allegations for this claim are also substantially similar to paragraphs 20, 21, and 23 of the "common law implied indemnity" claim:

> 29. MBS alleged that Hoffman is liable for various errors and omissions regarding the construction and design of the Monastery's HVAC system. Under its subcontract with Volkman, R&R was responsible for the placement of insulation. To the extent MBS's allegations regarding the HVAC system's defects are true, such defects were proximately caused, in whole or in part, by R &R and not by any active negligence of Hoffman.

> 30. As a result of MBS's allegations, Hoffman has incurred damages in an amount to be proven at trial related to sums paid by Hoffman to make repairs and/or pay for repairs on the Project and to settle the dispute with MBS. The damages Hoffman has incurred and may continue to incur were proximately caused by R&R.

31. Hoffman is entitled to assert a right of subrogation against R&R in an amount to be proven at trial related to sums paid by Hoffman to make repairs and/or pay for repairs on the Project and to settle the dispute with MBS, plus any additional damages Hoffman may suffer in the future.

(Filing No. 122, at CM/ECF p. 6, ¶¶ 29-30).

"Generally, subrogation is the right of one, who has paid the obligation which another should have paid, to be indemnified by the other." *SFI Ltd. Partnership 8 v. Carroll*, 851 N.W.2d 82, 88 (Neb. 2014), citing *Buckeye State Mut. Ins. Co. v. Humlicek*, 822 N.W.2d 351 (Neb. 2012). "It is the substitution of one person in the place of another with reference to a lawful claim, demand, or right, so that the one who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." *Midwest PMS v. Olsen*, 778 N.W.2d 727, 732 (Neb. 2010), citing *Leader Nat. Ins. v. American Hardware Ins.*, 545 N.W.2d 451 (Neb. 1996). In other words, "[o]ne who asserts a right of subrogation must step into the shoes of, or be substituted for, the one whose claim or debt he has paid and can only enforce those rights which the latter could enforce." *Thrower v. Anson*, 752 N.W.2d 555, 562 (Neb. 2008), quoting *Querrey & Harrow v. Transcontinental Ins.*, 885 N.E.2d 1235, 1237 (Ind. 2008) (Sullivan, J., dissenting).

"The doctrine of equitable subrogation applies where a party is compelled to pay the debt of a third person to protect his own rights or interest or to save his own property." *Bel Fury Invs. Group, L.L.C. v. Palisades Collection, L.L.C.*, 814 N.W.2d 394, 400 (Neb.App. 2012), citing *Rawson v. City of Omaha*, 322 N.W.2d 381 (Neb. 1982). "[S]ubrogation is never awarded in equity to one who is merely a volunteer in paying the debt of another." *Id.*, quoting *Rawson*, 322 N.W.2d at 384. The Nebraska Supreme Court has expressly held, however, that "one who is sued ... and who, in an effort to save his property, including the expenditure of attorney fees, enters into a reasonable settlement is not a volunteer and is entitled to seek reimbursement under the doctrine of equitable subrogation." *Rawson*, 322 N.W.2d at 385. *See also In re Air*

-18-

*Crash Disaster*, 86 F.3d 498, 550 (6th Cir. 1996) ("Equitable subrogation is especially well-suited to allow recovery by an innocent settling party from the actual wrongdoer, and it has often been applied in this context."), citing *Rawson*.

"Subrogation is an equitable principle applied not as a legal right but to subserve the ends of justice and do equity." *Humlicek*, 822 N.W.2d at 354, citing *Countryside Co-op. v. Harry A. Koch Co.*, 790 N.W.2d 873 (Neb. 2010). "In terms of the exercise of the right of subrogation, no general rule can be laid down which will afford a test for its application in all cases." *Id.*, citing *Jindra v. Clayton*, 529 N.W.2d 523 (Neb. 1995). "The facts and circumstances of each case determine whether the doctrine is applicable." *Id.*

Robinson advances no arguments against subrogation that have not already been discussed with reference to the indemnity and contribution claims. Because the court has rejected those arguments, Robinson's motion for summary judgment on Hoffman's third-party complaint will be denied.

### B. Robinson's Motion for Leave to Amend

On February 23, 2015, Robinson moved to amend its motion for summary judgment against Hoffman "to include the identical arguments (that subrogation has been waived and a party cannot recover indemnification and subrogation unless that party was free from active culpability)" that were included in its motion for summary judgment against Volkman. The motion will be denied because the deadline for filing motions for summary judgment was January 13, 2015 (*see* Filing No. 113), and Hoffman represents that it "would have additional arguments that would need to be made as well as additional evidence that would need to be presented" if the amendment were allowed (Filing No. 156 at CM/ECF p. 3).

-19-

*C. Volkman and AMCO's Claims Against Robinson*

Volkman and AMCO's claims for indemnity, contribution, and subrogation are virtually identical to the claims alleged by Hoffman, except that they seek to recover damages for amounts paid "to settle the dispute with MBS *and Hoffman*" (Filing No. 148, ¶¶ 24, 28, 32 (emphasis supplied)). In support of his motion for summary judgment, which was filed with reference to Volkman's first amended third-party complaint (before AMCO was added as a party), Robinson argues that Volkman (1) is not the real party in interest; (2) is not entitled to contribution because its action sounds in contract; (3) is not entitled to indemnity or contribution because there is no common liability; (4) cannot recover contribution because it failed to extinguish R&R's liability as to Hoffman; (5) waived its right to seek subrogation from R&R; and (6) cannot obtain subrogation and indemnity unless it was free from culpability. The first issue appears to have been resolved by the filing of a second amended third-party complaint (Filing No. 148) on February 6, 2012, which added Volkman's insurer as a third-party plaintiff, and the third issue has already been discussed with reference to the motion for summary judgment against Hoffman. The remaining four arguments will be addressed below.

*1. No Contribution in Contract Actions*

Robinson argues that Volkman's action sounds in contract and, relying on cases from other jurisdictions, asserts that contribution is not available in such an action. Volkman has not responded to this argument, but in light of the Nebraska Supreme Court's holding in *Malone* that indemnity may be asserted as an independent claim, the court believes that contribution should be accorded the same treatment. As previously discussed, the only real difference between the two equitable concepts is that contribution involves sharing the cost of an injury, whereas indemnification involves a complete shifting of the cost from one to another. *See Malone*, 858 N.W.2d at 212. As held by the Wisconsin Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Schara*, 201 N.W.2d 758, 759 (Wis. 1972), "a cause of action for contribution is

-20-

separate and distinct from the underlying cause of action whether that underlying cause sounds in contract or in tort." Accordingly, "an action for contribution does not fall merely because the underlying action is one of contract. Rather, instead of looking to the nature of the underlying transaction, the question is simply whether one person jointly liable paid more than his fair share for a common obligation." *Kafka v. Pope*, 533 N.W.2d 491, 494 (Wis. 1995).

### 2. Failure to Extinguish R&R's Liability to Hoffman

Robinson states that "Volkman failed to extinguish R&R's liability as to Hoffman when Volkman's insurer paid $400,000 to Hoffman to settle this matter," and contends that contribution is not allowed unless the party seeking contribution "extinguished the liability of the parties from whom contribution is sought" (Filing No. 131 at CM/ECF p. 19, quoting *Estate of Powell*, 765 N.W.2d at 504). Volkman does not refute this contention, but merely indicates that "Volkman and Hoffman settled the various claims MBS had against themselves as well as R&R" and thereby "extinguish[ed] the common liability of the parties as to MBS" (Filing No. 143 at CM/ECF p. 16).

In the settlement agreement, MBS released all claims "against Hoffman, FEI [Fredericksen], Volkman, EC [Engineered Controls], and their ... subcontractors" (Filing No. 123-2, at CM/ECF p. 8, ¶¶ 1-2, 4). However, Hoffman, Fredericksen, Volkman, and Engineered Controls "each expressly reserved their claims, if any, against Robinson" and "agree[d] that Zurich/Hoffman and Allied/Volkman may, in their discretion, continue the prosecution of the claims against Robinson" (Filing No. 123-2, at CM/ECF p. 18, ¶ 8). The $350,000 that AMCO paid as part of the settlement with MBS may give rise to a claim for contribution from Robinson, but the $400,000 that AMCO paid to Hoffman does not. Thus, Robinson is entitled to partial summary judgment providing that Volkman and AMCO are not entitled to contribution from Robinson regarding any portion of the $400,000 settlement payment that was made to Hoffman.

-21-

*3. Waiver of Subrogation*

Clause 9.2.8.1 of Volkman's subcontract with Hoffman provides for the waiver of certain subrogation rights:[6]

> The Design-Builder [Hoffman] and Subcontractor [Volkman] waive all rights against each other, the Owner [MBS] and the Architect/Engineer [Hoffman], and all of their respective consultants, subcontractors, and sub-subcontractors, agents and employees, for damages caused by perils to the extent covered by the proceeds of the insurance provided in Clause 9.2.7.1, except such rights as they may have to the insurance proceeds. The Subcontractor shall require similar waivers from its subcontractors.

(Filing No. 123-2, at CM/ECF p. 82). The referenced Clause 9.2.7.1 provides:

> Upon written request of the Subcontractor, the Design-Builder shall provide the Subcontractor with a copy of the Builder's Risk policy of insurance or any other property or equipment insurance in force for the Project and procured by the Owner or Design-Builder. The Design-Builder will advise the Subcontractor if a Builder's Risk policy of insurance is not in force.

(Filing No. 123-2, at CM/ECF p. 81).

Robinson argues that because "Volkman's insurer, covered all of the damages that Volkman incurred during the Remediation[,] ... Volkman's waiver of subrogation against R&R is effective and should be enforced" (Filing No. 131, at CM/ECF p. 21). By its terms, however, the waiver of subrogation clause only applies to damages that are covered by insurance that was procured by Hoffman or MBS.

---

[6] Nebraska, "like other jurisdictions, recognize[s] the important policy goal that waivers of subrogation serve in avoiding disruption of construction projects and reducing litigation among parties to complicated construction contracts." *Lexington Ins. Co. v. Entrex Communication Services, Inc.,* 749 N.W.2d 124, 131 (Neb. 2008).

*4. No Subrogation Unless Free From Culpability*

Finally, Robinson argues that "Volkman cannot recover from R&R unless a jury finds that Volkman was free from culpability during the Project" (Filing No. 131, at CM/ECF p. 21). In his reply brief, however, Robinson modifies this statement to argue instead that "Volkman cannot recover subrogation *or indemnification* unless it (Volkman) was free from *active fault* during the Project" (Filing No. 149, at CM/ECF p. 12 (emphasis supplied)), and he "requests this Court to enter a partial summary judgment, finding that Volkman and AMCO cannot recover subrogation or indemnification from R&R in the event a jury concludes that [Volkman] was actively culpable during the Project" (Filing No. 149, at CM/ECF pp. 14-15).[7] Robinson's request will be denied because "[t]he Federal Rules of Civil Procedure provide no basis for granting partial summary judgment on a hypothetical question of this sort, *see* Fed.R.Civ.P. 56(a) (providing for summary judgment on 'part of [a] claim or defense' where there is no genuine dispute as to any material fact)." *Gaudreault v. Elite Line Services, LLC,* 22 F.Supp.3d 966, 978 (D.Minn. 2014).

Restatement (Third) of Restitution and Unjust Enrichment § 24 permits subrogation in the following circumstance:

(1) If the claimant renders to a third person a performance for which the defendant would have been independently liable to the third person, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment.

(2) There is unjust enrichment in such a case to the extent that

---

[7] For its part, Volkman states that "Nebraska recognizes what other jurisdictions have termed the 'active-passive' theory of equitable indemnity" (Filing No. 143, at CM/ECF p. 21, quoting *Madden v. Antonov,* 966 F.Supp.2d 851, 856 (D.Neb. 2013)), and it compares this to a rule stating that subrogation "is not allowed where the debt paid is one for which the payor is primarily liable" (Filing No. 143, at CM/ECF p. 22, quoting *Madden,* 966 F.Supp. 2d at 859).

(a) the claimant acts in the performance of the claimant's independent obligation to the third person, or otherwise in the reasonable protection of the claimant's own interests; and

(b) as between the claimant and the defendant, the performance in question (or the part thereof for which the claimant seeks restitution) is primarily the obligation of the defendant.

Subrogation "is one of the mechanisms by which the law of restitution and unjust enrichment will reallocate the burden of a given liability from one who has originally discharged it to another whom the law considers more appropriate to bear it." *Id.*, comment a. "To this extent a claim under § 24 is directly analogous to a claim under § 23, usually called 'indemnity' or 'contribution.'" *Id.* "The principal difference is that the parties to a restitution claim within the scope of § 23 are at the outset jointly and severally liable to the third person in the transaction; while § 24 deals with claims between parties whose duties to the third person are not only independent but may be of different character and origin." *Id.* "Restitution under this section [24] depends on a legal conclusion that, as between claimant and defendant, the performance with respect to which the claimant seeks restitution is primarily the obligation of the defendant." *Id.*, comment g. "The relevant determination of 'primary' and 'secondary' thus ranks the obligations of the parties inter se, not by reference to their respective obligations to the third party whom the claimant has paid." *Id.*

## III. CONCLUSION

Robinson is entitled to partial summary judgment providing that Volkman and AMCO are not entitled to contribution from Robinson regarding any portion of the $400,000 settlement payment that was made to Hoffman, because such payment did not extinguish Robinson's liability to Hoffman. In all other respects, however, Robinson's motions will be denied.

Accordingly,

-24-

IT IS ORDERED that:

1.  Third-Party Defendant Robinson's motion for leave to amend (Filing No. 153) is denied.

2.  Third-Party Plaintiffs' objection to Robinson's motion for leave to amend (Filing No. 156) is denied without prejudice.

3.  Third-Party Defendant Robinson's motion for summary judgment against Third-Party Plaintiff Hoffman (Filing No. 121) is denied.

4.  Third-Party Defendant Robinson's motion for summary judgment against Third-Party Plaintiffs Volkman and AMCO (Filing No. 130) is granted in part and denied in part, as follows:

    a.  The motion is granted to the extent that Volkman and AMCO's contribution claim relates to a $400,000 payment to Hoffman.

    b.  In all other respects, the motion is denied.

May 4, 2015.                    BY THE COURT:

                                s/ *Richard G. Kopf*
                                Senior United States District Judge

---

* This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.