IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MISSIONARY BENEDICTINE SISTERS, INC., | ) ) ) | 4:11CV3180 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| HOFFMAN, LLC, | ) ) | |
| Defendant and Third-Party Plaintiff | ) ) ) | |
| v. | ) ) | |
| FREDERICKSEN ENGINEERING, INC., VOLKMAN PLUMBING & HEATING, INC., and LONNIE ROBINSON d/b/a R&R Mechanical Insulation, | ) ) ) ) ) | MEMORANDUM AND ORDER |
| Third-Party Defendants | ) ) | |
| VOLKMAN PLUMBING & HEATING, INC., and AMCO INSURANCE COMPANY, | ) ) ) ) | |
| Third-Party Plaintiffs | ) ) | |
| v. | ) ) | |
| LONNIE ROBINSON d/b/a R&R Mechanical Insulation, and ENGINEERED CONTROLS, INC., | ) ) ) ) | |
| Third-Party Defendants | ) ) | |

Third-Party Plaintiffs, Hoffman, LLC ("Hoffman"), Volkman Plumbing & Heating, Inc. ("Volkman"), and AMCO Insurance Company ("AMCO"), have filed a motion in limine to exclude the opinion testimony and report of John B. Wilhelmi,

who has been retained as an expert by Third-Party Defendant Lonnie Robinson, doing business as R&R Mechanical Insulation ("Robinson" or "R&R"). For the reasons discussed below, the motion in limine will be granted.

Robinson states that he "intends to utilize Wilhelmi to provide a nonscientific expert opinion based on his extensive experience in the mechanical contracting industry" (Filing No. 146, at 4). Regarding his experience in this industry, Wilhelmi states in an affidavit that from 1972 through 2011 he worked for The Waldinger Corporation, one of the largest mechanical contractors in the United States, with its home office in Des Moines, Iowa; that during the first 10 years of employment he worked in the mechanical estimating department; that from 1982 to 2011, he worked at the Omaha, Nebraska branch office, where he supervised and was responsible for all of company's operations, estimating, marketing, and accounting; that during Wilhelmi's 40-year tenure at The Waldinger Corporation, he reviewed approximately 2,000 major mechanical contracting agreements, of which approximately 500 were approved by the company; that if a project was valued in excess of $5 million, he was solely responsible for both reviewing and approving the agreement; that insulation work was almost always included in the agreements he reviewed and usually concerned about 20% of the total price of the project; that after he approved a mechanical contracting agreement, he was responsible for taking or reviewing bids from insulation subcontractors for purposes of subcontracting the insulation work; that in addition to his work experience, Wilhelmi served as the National President of the Mechanical Contractors Association of America ("MCAA") in 2008 and 2009, and has been a member of the National MCAA's board of directors since 2001; that he created and conducted two "Institute for Project Acquisition" conferences for the MCAA; and that since 2011 he has been self-employed as a consultant (Filing No. 147-1). For education, Wilhelmi graduated from high school and attended college for approximately 3 years without obtaining a degree (Wilhelmi Dep. (Filing No. 129-3), at 10:16-11:23). He has earned certain professional licenses from Omaha and Council Bluffs in connection with being a fitter, plumber, tinner, and mechanical contractor (Wilhelmi Dep., at 11:24-14:17).

Wilhelmi's report was prepared on November 3, 2014, and was based solely on his review of documents.[1] In the report he offers the following opinions:

     1. R&R Insulation was not provided the project conditions contemplated by the Agreement and required by the project specifications.

     2. Volkman, Hoffman, and Fredericksen (individually and collectively) failed to comply with contract and project specification requirements.

     3. The failure by Volkman, Hoffman, and Fredericksen (individually and collectively) to comply with the project specification requirements constituted breaches of the various contract documents.

     4. In the absence of the required project conditions, it was impossible for R&R Insulation to install its work in full compliance with the specifications.

     5. The Engineer:

          a. Had the authority and duty to inspect the mechanical construction which includes the insulation.

---

[1] Wilhelmi states in his affidavit that he personally traveled to the Immaculata Monastery in the course of providing opinions related to the work undertaken by R&R and other parties to the lawsuit (Wilhelmi Aff., ¶ 13). Wilhelmi testified, however, that his visit to the Monastery did not occur until mid-November of 2014 (Wilhelmi Dep., at 18:3-5), which would have been after he submitted his report. Wilhelmi makes no mention of the visit in his report, stating only that his opinions are "[b]ased on [his] education, training, experience, and review of the various documents described" in the report (Filing No. 120-2, at 9). In any event, the timing of this visit would have been long after R&R's work had been remediated, and involvement by Hoffman and Volkman in the project had ceased. As testified by Paul Splittgerber, an employee of the Monastery, the remediation work was completed during the summer of 2013. (Splittgerber Dep. (Filing No. 152-2)). As such, there is no evidence that Wilhelmi was actually able to personally view the work performed by R&R when he visited the site.

b. Had the authority to order the correction of piping and/or insulation that was not in accordance with the plans and specifications.

c. Did inspect the project including pipe insulation. See the inspection reports prepared by the mechanical engineer.

d. Was and still is able to inspect the pipe insulation at the units as the work is not concealed.

e. Did accept the project as complete as indicated by the Certificate of Occupancy and final and full payment.

6. The work performed by Volkman, after the original project completion, indicates that insulation issues at the monastery were the result of project conditions, not the result of poor pipe insulation installation.

7. The specification which expressly permitted elastomeric pipe insulation in other areas within the monastery confirms that such insulation was contemplated for the project and was expressly precluded from use on the mechanical insulation; this was true particularly within the unit ventilators and fan-coil units.

(Filing No. 122, at 10-11)

"The proponent of the expert testimony bears the burden to prove its admissibility." *Menz v. New Holland North America, Inc.*, 507 F.3d 1107, 1114 (8th Cir. 2007). Robinson has failed to establish that any of Wilhelmi's proposed expert testimony is admissible under Federal Rule of Evidence 702, which provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The screening requirement of Rule 702 has been boiled down to a three-part test:

First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014) (quoting *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008)).

"Rule 702 reflects a 'relax[ation of] the traditional barriers to opinion testimony, and the court's inquiry is intended to be flexible." *In re Prempro Products Liability Litigation*, 586 F.3d 547, 565 (8th Cir. 2009) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993)). "The district court must assess whether the methodology used by the proposed expert is valid and whether it was properly applied." *Id.* "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Id.* (quoting *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005)).

While Wilhelmi may have developed an expertise in reviewing mechanical contracting agreements, "in disputes such as this, construction of the terms and conditions of written contracts ... is an issue of law for the trial court to determine, not matters of fact insertable into the trial record through the Federal Rules of Evidence." *Weitz Co., LLC v. Lexington Ins. Co.*, ___ F.3d ___, 2015 WL 2217552, at *4 (8th Cir. May 12, 2015). "[E]xpert testimony on legal matters is not admissible." *Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (expert opinion as to whether insured helicopter was being operated in violation

-5-

of FAA regulations, within meaning of policy exclusion, was inadmissible). Thus, to the extent Wilhelmi's opinions involve the interpretation of contract provisions, they are inadmissible.

A witness may qualify as an expert "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Rule 702 does not rank academic training over demonstrated practical experience." David E. Watson, P.C. v. United States, 668 F.3d 1008, 1014 (8th Cir. 2012) (quoting United States v. Roach, 644 F.3d 763, 764 (8th Cir. 2011) (per curiam)). "However, for an expert witness to be qualified based on experience, that experience must bear a close relationship to the expert's opinion." Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009) (district court did not abuse its discretion in finding police officer was not qualified to offer testimony regarding strip-search procedures, officer motivations, or psychological impact of custody on arrestees where there was no evidence that officer had any experience with civil rights violations or strip searches, nor was there any evidence that officer had any work experience pertinent to psychology) (quoting Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 283-84 (8th Cir. 1995)); see also Garnac Grain Co. v. Blackley, 932 F.2d 1563, 1566 (8th Cir. 1991) (affirming district court's decision not to qualify as experts two witnesses who lacked formal training and possessed limited practical knowledge and experience in subject area of proffered testimony).

Wilhelmi has not been shown to possess relevant experience with insulation or its installation, work as a design-builder, work as an engineer, or the potential causes of water damage and improper installation of insulation that would qualify him to give expert opinions in connection with such matters. For instance, in discussing the process of insulation installation, Mr. Wilhelmi told the 32-year-old examining attorney, "I have not done any insulation myself for a long time, longer than you probably are old" (Wilhelmi Dep., at 68:10-12). He also stated that The Waldinger Corporation never performed the installation of insulation on chilled water piping, such as is involved in this case, but would always subcontract that work to other subcontractors (*id.*, at 70:2-71:5). Such work was not even overseen by him (*id.*). The

-6-

company used project managers to manage the day-to-day operations of a project, and Wilhelmi's involvement was limited to jobs that had troubles (*id.*, at 14:18-15:5.). On larger jobs, Wilhelmi was involved in the creation of the estimate regarding costs, markup, overhead, job expense, and labor factors, but he had no role in performing any design work (*id.*, at 15:6-25). Also, since becoming a self-employed consultant, Wilhelmi has not worked on any projects that were similar to the project at issue in this litigation (*id.*, at 5:6-6:6).

Robinson's brief makes clear that he intends to have Wilhelmi testify that "it was impossible for R&R to insulate certain areas of the Monastery in accordance with specifications . . . [and that] the holes in the walls and floors in the Monastery were too narrow to accept both the piping and insulation called for in the specifications" (Filing No. 146, at 14). Although Wilhelmi professes to be "highly experienced in knowing the areas that must be insulated on a particular project, the type and size of insulation that must be applied to each given area, and the manner in which such insulation must be applied for optimal results" (Wilhelmi Aff., ¶ 8), his background in reviewing mechanical contracting agreements does not qualify him to offer this technical opinion.

When discussing the tight working conditions he contends R&R was faced with in performing the insulation work, Wilhelmi could only refer back to his time working for his father during high school and college, stating, "[I]t's difficult to do at best. I know I didn't do any better job than Lonnie [Robinson] did. And we never had a problem. So I don't quite understand why there's a problem here" (Wilhelmi Dep., at 51:2-9). When asked about that statement, Wilhelmi stated that he was "not an engineer" and was "not going to get into … that side of the situation" (Wilhelmi Dep. 52:9-23.). By his own admission, it is "not [Wilhelmi's] area of expertise" to comment on basic issues such as the calculations performed by Third-Party Plaintiffs' expert regarding the environmental conditions that would be required for condensation to even develop (*id.*, at 54:10-55:2; 59:22-60:6).

In his report and throughout his deposition, Wilhelmi expresses opinions about whether penetration sizes through which the insulation was to go was large enough and whether other project conditions met the requirements of contract documents, but he never articulates any basis to support his contention that these purported facts would have led to the problems with the insulation installation, the condensation on the chilled water piping, or any of the other problems on the project. Even if he were qualified to opine on such issues, which has not been established, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* That is the case here.

In conclusion, Wilhelmi's proffered opinions fail to satisfy all three parts of the Rule 702 test for admissibility (*i.e.*, relevancy, expert qualification, and reliability). Accordingly,

IT IS ORDERED that Third-Party Plaintiffs' motion in limine (Filing No.127) is granted, and that John B. Wilhelmi's testimony and written report shall not be received in evidence.

June 12, 2015.                    BY THE COURT:

                                  s/ Richard G. Kopf
                                  Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.